**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| HILDA L. SOLIS, Secretary of Labor, United States Department of Labor, | |
| Plaintiff, | No. 10 C 123 |
| v. | Judge James B. Zagel |
| BRUCE HARTMANN, TERRY HARTMANN, MID-STATES EXPRESS, INC. 401(K) PLAN, and MID-STATES EXPRESS, INC. EMPLOYEE BENEFIT PLAN, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

**I.      BACKGROUND**

Plaintiff Hilda L. Solis, Secretary of Labor, United States Department of Labor

("Secretary") filed a four-count complaint against Defendants Bruce Hartmann and Terry

Hartmann, alleging that under the Employee Retirement Income Security Act of 1974

("ERISA"), 29 U.S.C. § 1001, *et seq.*, Defendants breached their fiduciary responsibilities to the

participants and beneficiaries of the Mid-States Express, Inc. 401(k) Plan ("401(k) Plan"), and

that Defendant Bruce Hartmann breached his fiduciary responsibilities to the participants and

beneficiaries of the Mid-States Express Employee Benefit Plan ("Benefit Plan"). The four counts

are as follows:

(1) Failure to remit employee contributions to the 401(k) Plan in a timely manner.
(2) Failure to remit employee contributions to the Benefit Plan for insured benefit(s).
(3) Failure to use employee contributions to the Benefit Plan to pay health claims during the period that the Benefit Plan's medical coverage was self-insured.
(4) Misrepresentation of and failure to disclose the Benefit Plan's Funding Status.

Plaintiff now moves for partial summary judgment on all four counts. For the following reasons

the motion for summary judgment is GRANTED on all four counts.

## I.      STANDARD OF REVIEW

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The facts presented are to be construed in a light most favorable to the nonmoving party. *Smith v. City of Chicago,* 242 F.3d 737, 742 (7th Cir. 2001). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323–324 (1986).

## II.      DISCUSSION

### A.  Local Rule 56.1 and the Secretary's Statement of Facts

Pursuant to Local Rule 56.1 of the Northern District of Illinois, a party moving for summary judgment must present a statement of undisputed material facts consisting of "short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph." N.D. Ill. L.R. 56.1(a). A party opposing a motion for summary judgment must then present a response to the movant's statement consisting of "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." N.D. Ill. L.R. 56.1(b)(3)(B). Furthermore, "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the

opposing party." N.D. Ill. L.R. 56.1(b)(3)(C); *Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 562 (7th Cir. 2002). It is within my discretion to strictly enforce this rule. *See Metro. Life*, 297 F.3d at 562 ("[W]e have emphasized the importance of local rules and have consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules governing summary judgment.") (internal citations omitted).

In this case, because Defendants failed to comply with Local Rule 56.1, the Secretary's Statement of Material Facts is deemed admitted. While Defendants attempted to respond to each of the numbered paragraphs of the Secretary's statement of facts, they ultimately made statements for which they did not provide supporting evidence and failed to specifically reference or point to any parts of the record or other supporting materials they relied upon.[1] Generally, a simple denial of an opponent's argument is insufficient to defeat a motion for summary judgment. *See Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004) ("The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the nonmovant must present definite, competent evidence in rebuttal."). That Defendants are both proceeding *pro se* does not excuse their failure to comply because the Secretary, as required by Local Rule 56.2 and *Timms v. Frank*, 953 F.2d 281 (7th Cir. 1992), served Defendants with a notice to *pro se* litigants that adopted the language set forth in Local Rule 56.2 and provided Defendants with information about the nature of a summary judgment motion, how to defeat such a motion, and the consequences of not complying with the provisions of Federal Rule of Civil Procedure 56(c) and Local Rule 56.1.

Furthermore, with respect to affidavits or declarations, Federal Rule 56(c) provides: "An affidavit or declaration used to support or oppose a motion must be made on personal

---

[1] Defendants filed a "Response to Plaintiff's Motion for Partial Summary Judgment" and an additional "Response to the Secretary of Labor's Statement of Material Facts Not in Dispute," both of which I have construed as responses to the summary judgment motion.

knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *See* Fed. R. Civ. P. 56(c)(4). Such affidavits or declarations are not admissible unless they are subscribed in proper form as true under penalty of perjury. 28 U.S.C. § 1746. A court must not consider parts of an affidavit that fail to comply with Rule 56(c). *Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 429 (7th Cir. 2004). *See also Collins v. Seeman*, 462 F.3d 757, 760 n. 1 (7th Cir. 2006) (concluding that unsworn statements do not satisfy the requirements of Federal Rule 56(c) and that it was proper for the district court to disregard the content of such statements in its summary judgment decision).

Here, in an attempt to dispute their status as fiduciaries, Defendants submitted three declarations by Bradford Hartmann, Steven Hartmann, and David Yarbrough. However, these three individuals failed to provide a basis to conclude that their statements represent personal knowledge, particularly with respect to the relationship between Mid-States Express and Amcore Bank. Furthermore, while Bradford Hartmann's affidavit/declaration was prescribed in proper form, Steven Hartmann and David Yarbrough's statements were not. *See* 28 U.S.C. § 1746. Thus, because these three statements would not meet the standards of admissibility under Rule 56(c), I am disregarding them in my determination of the Secretary's motion for summary judgment.

Thus, while Defendants attempted to cast doubt on their fiduciary status, they did not present adequate evidence to dispute the Secretary's statement of facts. Because Defendants failed to file the response required by Local Rule 56.1(b), I deem the Secretary's statement of facts, which is properly supported by evidence, admitted in its entirety. *See also Ewell v. Dobucki*, 224 F.3d. 638, 639 (7th Cir. 2000) (reasoning that since the nonmovant chose not to

4

contest the moving party's statement of undisputed facts, the Seventh Circuit would accept the statement as undisputed, as the district court did). Thus, the facts as stated by the Secretary in support of the government's motion for partial summary judgment are hereby expressly incorporated.

### B. Fiduciary Status under ERISA

The undisputed facts show that both Terry Hartmann and Bruce Hartmann were fiduciaries to the 401(k) Plan within the meaning of ERISA § 3(21)(A) and that Bruce Hartmann was a fiduciary of the Benefit Plan within the meaning of ERISA § 3(21)(A). As fiduciaries, Defendants were subject to the general fiduciary provisions of § 404 and the prohibited transaction provisions of § 406. As an initial matter, it is also undisputed that the 401(k) Plan and Benefit Plan are ERISA-Covered Employee Benefit Plans.

> With respect to fiduciary status, § 3(21)(A) provides in relevant part:
> a person is a fiduciary with respect to a plan to the extent
> (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). The Department of Labor has elaborated, explaining that "a plan administrator or a trustee of a plan must, by the very nature of his position, have 'discretionary authority or discretionary responsibility in the administration' of the plan within the meaning of section 3(21)(A)(iii) of the Act. Persons who hold such positions will therefore be fiduciaries." 29 C.F.R. § 2509.75–8.

Additionally, Congress meant for "fiduciary" to be broadly construed to include functional fiduciaries beyond those formally designated as plan administrators.[2] This "liberal

---

[2]      Legislative history shows that with respect to "fiduciary," "the definition includes persons who have authority and responsibility with respect to the matter in question, regardless of their formal title." House Conference

standard for fiduciary status" has been reiterated several times in this and other circuits. *Baker v. Kingsley*, 387 F.3d 649, 663-64 (7th Cir. 2004). *See, e.g., Plumb v. Fluid Pump Serv., Inc.*, 124 F.3d 849, 855 (7th Cir. 1997) ("It is true that a person can become a fiduciary with respect to a particular activity even if there is no formal written allocation of the duty."); *Mutual Life Ins. Co. of N.Y. v. Yampol,* 840 F.2d 421, 425 (7th Cir.1988) (noting "this court's consistently broad reading" of the definition of an ERISA fiduciary); *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 438 (6th Cir. 2006) (reasoning that a "fiduciary" not only includes persons specifically named as fiduciaries by the benefit plan, but also anyone else who exercises discretionary control or authority over a plan's management, administration, or assets); *Donovan v. Mercer*, 747 F.2d 304, 308 (5th Cir. 1984) ("It is clear that Congress intended the definition of 'fiduciary' under ERISA to be broadly construed . . . "fiduciary" should be defined not only by reference to particular titles, such as 'trustee,' but also by considering the authority which a particular person has or exercises over an employee benefit plan."). Thus, to be a functional fiduciary under ERISA § 3(21)(A), an individual or entity need only "exercise a degree of discretion over the management of the plan or its assets, or over the administration of the plan itself." *Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574, 590 (7th Cir. 2000) (reasoning that an ERISA plan's Administrator was "undoubtedly . . . a fiduciary of the Plan"). *Compare Schmidt v. Sheet Metal Workers' Nat. Pension Fund*, 128 F.3d 541, 547 (7th Cir. 1997) (employee who merely performed ministerial and clerical functions relating to the administration of the plan was not an ERISA fiduciary because she had no discretionary authority or control in the tasks she was assigned).

### 1. Fiduciaries of the 401(k) Plan—Terry Hartmann and Bruce Hartmann

First, with respect to the 401(k) Plan, I find no genuine dispute as to the status of Terry

Rep. No. 93–1280, 93d Congress, 1974 U.S. Code Cong. and Ad. News 4639, 5038, 5103.

and Bruce Hartmann as fiduciaries of the 401(k) Plan through March 2009. Defendants admitted that at all relevant times, Mid-States sponsored the 401(k) Plan, for which Terry Hartmann and Bruce Hartmann served as named Trustees. *See* Secretary's Statement of Material Facts at ¶ 5. Additionally, Defendants admitted that the 401(k) Plan's governing documents required Terry Hartmann and Bruce Hartmann, as Trustees, to "receive, hold, invest, administer and distribute the Trust Fund as provided in this Plan . . . " *Id.* at ¶ 6. As part of these duties, the Trustees were responsible for making sure that employee contributions were remitted to the 401(k) Plan in a timely manner. *Id.* Thus, given Bruce and Terry Hartmann's discretionary authority over the management and administration of the 401(k) Plan as named Trustees, I find that they qualify as ERISA fiduciaries.

### 2. Fiduciary of the Benefit Plan—Bruce Hartmann

Second, with respect to the Benefit Plan, I also find no genuine dispute as to Bruce Hartmann's status as a fiduciary of the Benefit Plan because he exercised discretionary authority over both the administration of the Benefit Plan and the management of the Benefit Plan's assets between November 1, 2006 and March 27, 2009. While ERISA in § 3 defines "fiduciary," it does not define the term "plan assets," which appears throughout the statute. *See* 29 U.S.C. § 1002. However, the Department of Labor defined "plan assets" with respect to participant contributions to welfare benefit plans as:

> (a) . . . amounts (other than union dues) that a participant or beneficiary pays to an employer, or amounts that a participant has withheld from his wages by an employer, for contribution or repayment of a participant loan to the plan, as of the earliest date on which such contributions or repayments can reasonably be segregated from the employer's general assets. . . .
>
> (c) . . . in no event shall the date determined pursuant to paragraph (a)(1) of this section occur later than 90 days from the date on which the participant contribution amounts are received by the employer (in the case of amounts that a participant or beneficiary pays to an employer) or the date on which such amounts would otherwise have been payable to the participant in cash (in the case of amounts withheld by an employer

from a participant's wages).

29 C.F.R. § 2510.3–102. Pursuant to this regulation, therefore, the monies withheld from

employee wages for contribution to insured benefits under the Benefit Plan were plan assets as

of the 90th day following the day the monies were deducted. *See also United States v. Whiting*,

471 F.3d 792, 799 (7th Cir. 2006) (holding that unremitted employee contributions, including

employee contributions withheld from employee paychecks that had not been delivered to their

intended benefit plans, could be plan assets under ERISA).[3]

Additionally, as Mid-States' Chief Financial Officer, Bruce Hartmann was a signatory on all

Mid-States corporate bank accounts, where all employee contributions to the Benefit Plan were

held. *See* Secretary at ¶ 29. His approval was required for any action or payment on Mid-States'

expenses, including (1) the payment of insurance premiums to carriers providing benefits to the

participants and beneficiaries of the Benefit Plan; (2) the decision to pay adjudicated health

claims while medical coverage under the Benefit Plan was self-insured;[4] and (3) the decision of

when to pay specific participant health claims. *Id.* at ¶¶ 30-31. Thus, because Bruce Hartmann

exercised discretionary authority over the assets of the Benefit Plan retained in the Mid-States'

bank accounts, he is a fiduciary of the Benefit Plan under ERISA.

### A.  Counts 1 through 4

ERISA is a comprehensive remedial statute designed to promote and protect the interests

of participants and their beneficiaries in employee benefit plans. *Nachman Corp. v. Pension Ben.*

*Guar. Corp.*, 446 U.S. 359, 361, 100 S. Ct. 1723, 1726, 64 L. Ed. 2d 354 (1980). Specifically,

---

[3] The Seventh Circuit elaborated that funds withdrawn from employee paychecks represent an amount of money paid to employees in compensation. Once the contributions are withheld, the money no longer belongs to the company; rather, the funds belong to the employees. Therefore, employees have a present interest in the funds. *Whiting*, 471 F.3d at 799-800.

[4] Mid-States operated the medical benefits offered under the Benefit Plan through a self-insured funding mechanism, where claims were paid through employee contributions and the general assets of the company. *See* Secretary at ¶¶ 49-65.

Congress' chief concern was the misuse and mismanagement of plan assets by plan fiduciaries. *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142, 105 S. Ct. 3085, 3089, n.8, 87 L. Ed. 2d 96 (1985). Thus, Congress passed ERISA to ensure the equitable character and financial soundness of employee benefit plans "by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b).

Based on the undisputed facts, the Secretary's motion for partial summary judgment is proper on all four counts. I take each of these counts in turn.

## Count 1—Failure to remit employee contributions to the 401(k) Plan in a timely manner

Defendants Bruce Hartmann and Terry Hartmann, as fiduciaries of the 401(k) Plan, violated ERISA by failing to ensure that employee salary deferrals and participant loan repayments were remitted to the 401(k) Plan from January 1, 2009 to February 28, 2009.

### 1. Defendants Bruce Hartmann and Terry Hartmann breached their fiduciary duties under ERISA § 404(a)(1)(A)

ERISA § 404(a)(1) requires fiduciaries to protect participants and beneficiaries, providing in relevant part that:

> a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
> (A) for the exclusive purpose of:
>     (i) providing benefits to participants and their beneficiaries; and
>     (ii) defraying reasonable expenses of administering the plan;
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . .

29 U.S.C. § 1104(a)(1). This "duty of loyalty" or "duty of care" under ERISA requires fiduciaries to act with "complete and undivided loyalty to the beneficiaries of the trust," and with an "eye single to the interests of the participants and beneficiaries." *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 572, 105 S. Ct. 2833, 2841, 86 L. Ed.

2d 447 (1985); *Leigh v. Engle*, 727 F.2d 113, 123 (7th Cir. 1984). *See also Varity Corp. v. Howe*, 516 U.S. 489, 506, 116 S. Ct. 1065, 1075, 134 L. Ed. 2d 130 (1996) (reasoning that the "duty of loyalty requires trustee to deal fairly and honestly with beneficiaries").

In this case, Defendants breached their fiduciary duties under § 404(a)(1)(A) when they used 401(k) Plan assets for the general operating expenses of Mid-States, rather than for the exclusive purpose of providing benefits. *See* Secretary at ¶¶ 7-23, 27. Thus, in violation of § 404(a)(1)(A), Defendants clearly failed to act in the interests of the 401(k) Plan participants.

### 2. Bruce Hartmann violated ERISA § 406(a)(1)(D)

ERISA § 406(a)(1)(D) prohibits fiduciaries from engaging in certain transactions between a plan and party in interest, providing in relevant part that:

> **(1)** A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—
> . . .
> **(D)** transfer to, or use by or for the benefit of a party in interest, of any assets of the plan;

29 U.S.C. § 1106(a)(1)(D). First, as previously discussed, ERISA does not define the term "plan assets," which appears in § 406(a)(1)(D). However, the Department of Labor defined "plan assets" with respect to participant contributions to pension benefit plans as

> (a) . . . amounts (other than union dues) that a participant or beneficiary pays to an employer, or amounts that a participant has withheld from his wages by an employer, for contribution or repayment of a participant loan to the plan, as of the earliest date on which such contributions or repayments can reasonably be segregated from the employer's general assets. . . .
> (b) . . . in no event shall the date determined pursuant to paragraph (a)(1) of this section occur later than the 15th business day of the month following the month in which the participant contribution or participant loan repayment amounts are received by the employer (in the case of amounts that a participant or beneficiary pays to an employer) or the 15th business day of the month following the month in which such amounts would otherwise have been payable to the participant in cash (in the case of amounts withheld by an employer from a participant's wages).

29 C.F.R. § 2510.3–102. Pursuant to this regulation, therefore, the monies withheld from Mid-States employee wages for contribution to the 401(k) Plan and for participant loan repayments

were plan assets as of the 15th business day of the month following the month the monies were deducted. *See also Whiting*, 471 F.3d at 799 (holding that unremitted employee contributions, including employee contributions withheld from employee paychecks that have not been delivered to their intended benefit plans, can be plan assets under ERISA).

Additionally, under the definition of "party in interest" in §§ 3(14)(A) and (C),[5] as a fiduciary and plan sponsor, Mid-States was a party in interest to the 401(k) Plan. *See* Secretary at ¶¶ 2, 5. Finally, the salary deferral contributions and participant loan repayments deducted from Mid-States' employees' paychecks during the period January 1, 2009 to February 28, 2009 were never remitted to the 401(k) Plan, were retained in Mid-States' corporate accounts, and were used to pay Mid-States' expenses. *See id.* at ¶¶ 7-23. Thus, because Bruce Hartmann did not segregate employee contributions from Mid-States' general assets, he engaged in a prohibited party-in-interest transfer of plan assets to Mid-States in violation of ERISA § 406(a)(1)(D).

### 1. Bruce Hartmann violated ERISA § 406(b)(1)

ERISA § 406(b)(1) provides: **"**A fiduciary with respect to a plan shall not—**(1)** deal with the assets of the plan in his own interest or for his own account, . . . " 29 U.S.C. § 1106(b)(1). Bruce Hartmann engaged in self-dealing and violated § 406(b)(1) when he retained withheld employee contributions and participant loan repayments in Mid-States' general assets because it resulted in the direct financial gain to Mid-States and indirect financial gain to Defendants Terry Hartmann and Bruce Hartmann, Mid-States' Chairman and CFO, respectively.

### 2. Bruce Hartmann violated ERISA § 406(b)(2)

---

[5] ERISA provides, in relevant part that
    **(14)** The term "party in interest" means, as to an employee benefit plan—
    **(A)** any fiduciary (including, but not limited to, any administrator, officer, trustee, or custodian), counsel, or employee of such employee benefit plan;
    . . .
    **(C)** an employer any of whose employees are covered by such plan; . . .
29 U.S.C. § 1002(14)(A), (C).

ERISA § 406(b)(2) provides:

**(b)** Transactions between plan and fiduciary
A fiduciary with respect to a plan shall not—
. . .
**(2)** in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, . . .

29 U.S.C. § 1106(b)(2). A party's adverse interests need not be antithetical, but only different.

*Reich v. Compton*, 57 F.3d 270, 289 (3d Cir. 1995); *Sandoval v. Simmons*, 622 F. Supp. 1174,

1214 (C.D. Ill. 1985). Thus, similar to the § 406(b)(1) violation, by allowing the 401(k) Plan's

assets to be used for the general operation of Mid-States, whose interest were adverse to the

interests of the 401(k) Plan's participants and beneficiaries, Bruce Hartmann acted in a

transaction on behalf of Mid-States and thereby violated § 406(b)(2).

### 3.  Bruce Hartmann and Terry Hartmann violated ERISA § 403(a) and § 403(c)(1)

ERISA § 403(a) and § 403(c)(1) provide, in relevant part:

**(a)** . . . all assets of an employee benefit plan shall be held in trust by one or more trustees.
. . .
**(c)** Assets of plan not to inure to benefit of employer; allowable purposes of holding plan assets
**(1)** . . . the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan.

29 U.S.C. § 1103(a) and (c). Thus, as Trustees of the 401(k) Plan, Terry Hartmann and Bruce

Hartmann violated § 403(a) and § 403(c)(1) by failing to remit employee salary deferrals and

participant loan repayments to the 401(k) Plan and allowing Mid-States to retain these plan

assets in the company's general assets.

### 4. Terry Hartmann, as Trustee of the 401(k) Plan, is liable under ERISA for the ERISA violations committed by Bruce Hartmann

ERISA § 405(b)(1) provides, in relevant part:

**(b)** Assets held by two or more trustees
**(1)** . . . if the assets of a plan are held by two or more trustees--
**(A)** each shall use reasonable care to prevent a co-trustee from committing a breach;

29 U.S.C. § 1105(b)(1). As previously discussed, § 404(a)(1) of ERISA requires that a fiduciary act solely in the interest of the participants. Here, Bruce Hartmann, a Trustee to the 401(k) Plan, breached this § 404(a)(1) duty when he used 401(k) Plan assets for the general operating expenses of Mid-States, rather than for the exclusive purpose of providing benefits. Thus, Terry Hartmann, also a 401(k) Trustee, is liable under § 405(b)(1) for not using reasonable care to prevent his co-fiduciary Bruce Hartmann from committing a breach and for failing to ensure that the plan assets were remitted to the 401(k) Plan. *See Free v. Briody*, 732 F.2d 1331, 1335 (7th Cir. 1984) (holding trustee liable under § 405(b)(1) for losses incurred by plan resulting from cofiduciary's breach); Secretary at ¶ 23.

**Count 2—Failure to remit employee contributions to the Benefit Plan for insured benefit(s)**

Defendant Bruce Hartmann, as fiduciary of the Benefit Plan, violated ERISA by failing to remit employee contributions to health insurance, short-and long-term disability, and life insurance benefits under the Benefit Plan to the Benefit Plan during the period October 1, 2008 through February 28, 2009. Secretary at ¶¶ 32-48.

### 1. Bruce Hartmann breached his fiduciary duties under ERISA § 404(a)(1)(A)

As previously discussed, ERISA § 404(a)(1)(A) requires fiduciaries to discharge their duties with respect to ERISA-covered plans solely in the interests of participants. *See* 29 U.S.C. § 1104(a)(1)(A).

Similar to his violation of § 404(a)(1)(A) with respect to the 401(k) Plan, Bruce

13

Hartmann also breached his fiduciary duties under § 404(a)(1)(A) when he used Benefit Plan assets for the general operating expenses of Mid-States, rather than for the exclusive purpose of providing benefits. These expenses included payment for Bruce Hartmann's own personal medical insurance premiums and term life insurance premiums. Secretary at ¶¶ 46-48. Thus, in violation of § 404(a)(1)(A), Bruce Hartmann failed to act in the exclusive interests of the Benefit Plan participants.

### 2. Bruce Hartmann violated ERISA § 406(a)(1)(D)

As previously discussed, § 406(a)(1)(D) prohibits fiduciaries from directly or indirectly transferring assets to, for use by or for the benefit of, a party in interest. 29 U.S.C. § 1106(a)(1)(D). Pursuant to 29 C.F.R. § 2510.3–102, the monies withheld from employee wages for contribution to insured benefits under the Benefit Plan constituted "plan assets" as of the 90th day following the day the monies were deducted.

Additionally, under the definition of "party in interest" in §§ 3(14)(A) and (C), the fiduciary Mid-States was a party in interest to the Benefit Plan under ERISA. Finally, the contributions to the Benefit Plan deducted from Mid-States' employees' paychecks were never remitted to the Benefit Plan during the period October 1, 2008 through February 28, 2009, were retained in Mid-States' corporate accounts, and were used to pay Mid-States' expenses. Secretary at ¶¶ 32-48. Thus, because Bruce Hartmann did not segregate employee contributions from Mid-States' general assets, he engaged in a prohibited party-in-interest transfer of plan assets to Mid-States in violation of ERISA § 406(a)(1)(D).

### 3. Bruce Hartmann violated ERISA § 406(b)(1)

As previously discussed, ERISA § 406(b)(1) prohibits a fiduciary from dealing with plan assets in his own interest or for his own account. See 29 U.S.C. § 1106(b)(1). Bruce Hartmann

engaged in self dealing and violated § 406(b)(1) when he retained withheld employee

contributions to the Benefit Plan in Mid-States' general assets, resulting in the direct financial

gain to Mid-States and indirect financial gain to himself as Mid-States' CFO. Secretary at ¶¶ 32-

48.

### 4.   Bruce Hartmann violated ERISA § 406(b)(2)

As previously discussed, ERISA § 406(b)(2) prohibits a fiduciary from acting in any

transaction on behalf of a party whose interests are adverse to the interests of the plan or the

interests of its participants or beneficiaries. 29 U.S.C. § 1106(b)(2). Thus, similar to the

§ 406(b)(1) violation, by allowing the Benefit Plan's assets to be used for the general operation

of Mid-States, Bruce Hartmann acted in a transaction on behalf of Mid-States, whose interests

were adverse to the interests of the Benefit Plan's participants and beneficiaries, and thereby

violated § 406(b)(2). Secretary at ¶¶ 32-48.

### 5.   Bruce Hartmann violated ERISA § 403(c)(1)

As previously discussed, ERISA § 403(c)(1) provides that the assets of an employee

benefit plan shall never "inure to the benefit" of the employer and shall be held for the exclusive

purpose of providing benefit to participants in the plan. *See* U.S.C. § 1103(c). Thus, as fiduciary

of the Benefit Plan, Bruce Hartmann violated § 403(c)(1) by failing to remit employee

contributions to the Benefit Plan or an insurance carrier providing benefits under the Benefit

Plan and allowing Mid-States to retain these plan assets in the company's general assets.

Secretary at ¶¶ 32-48.

### Count 3—Failure to use employee contributions to the Benefit Plan to pay health claims during the period that the Benefit Plan's medical coverage was self-insured

Defendant Bruce Hartmann, as fiduciary of the Benefit Plan, breached his duty to use

employee contributions to health insurance, short-and long-term disability, and life insurance

benefits under the Benefit Plan to pay the participants' current medical claims incurred from November 1, 2005 to August 1, 2008. Secretary at ¶¶ 49-65.

1. **Bruce Hartmann breached his fiduciary duties under ERISA §§ 404(a)(1)(A) and 404(a)(1)(A)**

As previously discussed, ERISA § 404(a)(1)(A) requires fiduciaries to discharge their duties with respect to ERISA-covered plans solely in the interests of participants. *See* 29 U.S.C. § 1104(a)(1)(A).

In this case, Mid-States operated the medical benefits offered under the Benefit Plan through a self-insured funding mechanism, where claims were paid through employee contributions and the general assets of the company. Secretary at ¶¶ 49-50. The Benefit Plan's governing document required that all employee contributions to the Benefit Plan be used to pay benefit claims as soon as practicable after Mid-States received them. *See id.* at ¶ 49.

Between November 1, 2006 and July 25, 2008, Mid-States withheld $1,797,784 in employee contributions from its employees' paychecks and received $ 34,646.06 in COBRA premiums. Secretary at ¶¶ 54-56. These amounts were retained in Mid-States corporate bank accounts. *Id.* During this same period, Bruce Hartmann authorized Mid-States to pay $522,294 in administrative fees and $1,235,791 in adjudicated claims to Group Administrators, the Benefit Plan's third-party administrator, and $603,555.60 in payments to the Benefit Plan's prescription drug provider during this time period. *Id.* at ¶¶ 57-58, 62. Also during this period, participants incurred over $3 million in medical claims that had remained unpaid as of July 25, 2008. *Id.* at ¶¶ 64-65.

As of January 1, 2006, Mid-States was approximately 18 months behind in funding the Benefit Plan's adjudicated medical claims, some incurred as far back as August 2005. *Id.* at ¶ 60. Thus, employee contributions to the Benefit Plan made in late 2006 through August 2008 were

not being used to pay the participants' current claims. Rather, Bruce Hartmann was authorizing Mid-States to decrease its outstanding obligations to the Benefit Plan.

Thus, Bruce Hartmann breached his fiduciary duties under § 404(a)(1)(A) when he failed to ensure that the employee contributions to the Benefit Plan were used to pay current medical claims. *Id.* at ¶ 56. Thus, in violation of § 404(a)(1)(A), Bruce Hartmann failed to act in the exclusive interests of the Benefit Plan participants.

Additionally, ERISA § 404(a)(1)(D) requires plan fiduciaries to comply with a benefit plan's governing document. *See* 29 U.S.C. § 1104(a)(1)(D). The Benefit Plan's governing document requiring that all employee contributions to the Benefit Plan be used to pay benefit claims as soon as practicable after Mid-States received them. *See id.* at ¶¶ 49-52. Since Bruce Hartmann failed to comply with the Benefit Plan's governing document when he failed to pay benefit claims as soon as practicable after receiving them, Bruce Hartmann violated § 404(a)(1)(D).

### 2. Bruce Hartmann violated ERISA § 406(a)(1)(D)

As previously discussed, § 406(a)(1)(D) prohibits fiduciaries from directly or indirectly transferring assets to, for use by or for the benefit of, a party in interest. 29 U.S.C. § 1106(a)(1)(D). Pursuant to 29 C.F.R. § 2510.3–102, the monies withheld from employee wages for contribution to insured benefits under the Benefit Plan and the COBRA premiums received constituted "plan assets" as of the 90th day following the day the monies were deducted. Additionally, under the definition of "party in interest" in §§ 3(14)(B), the fiduciary Mid-States was a party in interest to the Benefit Plan under ERISA. *See* Secretary at ¶¶ 2, 5.

Finally, Bruce Hartmann failed to remit employee contributions and COBRA premiums to the Benefit Plan and failed to use these plan assets to pay claims incurred by participants and

beneficiaries between November 1, 2006 and July 25, 2008. *Id.* at ¶¶ 49-58, 60, 64-65. Rather, these plan assets were retained in Mid-States' corporate accounts and used to pay Mid-States' expenses.

Thus, because Bruce Hartmann did not segregate employee contributions from Mid-States' general assets, he engaged in a prohibited party-in-interest transfer of plan assets to Mid-States in violation of ERISA § 406(a)(1)(D).

### 3. Bruce Hartmann violated ERISA § 406(b)(1)

As previously discussed, ERISA § 406(b)(1) prohibits a fiduciary from dealing with plan assets in his own interest or for his own account. See 29 U.S.C. § 1106(b)(1). Bruce Hartmann violated § 406(b)(1) when he used withheld employee contributions to the Benefit Plan, intended for current medical coverage, to pay down Mid-States' outstanding debt to the Benefit Plan, which resulted in the direct financial gain to Mid-States and indirect financial gain to himself as Mid-States' CFO. Secretary at ¶ 65.

### 4. Bruce Hartmann violated ERISA § 406(b)(2)

As previously discussed, ERISA § 406(b)(2) prohibits a fiduciary from acting in any transaction on behalf of a party whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries. 29 U.S.C. § 1106(b)(2). Thus, similar to the § 406(b)(1) violation, by using withheld employee contributions to the Benefit Plan (intended for current medical coverage) to pay down Mid-States' outstanding debt to the Benefit Plan, Bruce Hartmann acted in a transaction on behalf of Mid-States, whose interests were adverse to the interests of the Benefit Plan's participants and beneficiaries, and thereby violated § 406(b)(2). Secretary at ¶ 65.

**Count 4—Misrepresentation of and failure to disclose the Benefit Plan's funding status**

Defendant Bruce Hartmann, a fiduciary of the Benefit Plan, engaged in

misrepresentations in violation of ERISA § 404(a)(1)(A). Secretary at ¶¶ 66-76. ERISA

§ 404(a)(1) requires fiduciaries to protect participants and beneficiaries, providing in relevant

part that:

> a fiduciary shall discharge his duties with respect to a plan solely in the interest of the
> participants and beneficiaries and—
> (A) for the exclusive purpose of:
>  (i) providing benefits to participants and their beneficiaries; and
>  (ii) defraying reasonable expenses of administering the plan;
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing
> that a prudent man acting in a like capacity and familiar with such matters would use in
> the conduct of an enterprise of a like character and with like aims . . .

29 U.S.C. § 1104(a)(1). This "duty of loyalty" and "duty of care" under ERISA requires

fiduciaries to act with "complete and undivided loyalty to the beneficiaries of the trust," and with

an "eye single to the interests of the participants and beneficiaries." *Cent. States, Se. & Sw.*

*Areas Pension Fund*, 472 U.S. at 572; *Leigh v. Engle*, 727 F.2d 113, 123 (7th Cir. 1984). *See*

*also Varity Corp.*, 516 U.S. at 506 ("duty of loyalty requires trustee to deal fairly and honestly

with beneficiaries").

To establish a violation of fiduciary duty based on misrepresentation, a plaintiff must

show: (1) that the defendants are plan fiduciaries under ERISA; (2) that defendants breached

their fiduciary duties by intentionally misrepresenting or failing to disclose material facts

affecting the interests of plan participants or beneficiaries; and (3) that the breach caused harm to

the plaintiff. *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 464 (7th Cir. 2010); *Hecker v.*

*Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009); *Brosted v. Unum Life Ins. Co. of America,* 421

F.3d 459, 465-66 (7th Cir.2005) (citing *Kamler v. H/N Telecomm. Serv., Inc.,* 305 F.3d 672, 681

(7th Cir.2002)); *Bowerman*, 226 F.3d at 590.

19

A statement or omission is "material" if it is information the participants need to know to keep from acting to their detriment. *Hecker*, 556 F.3d at 586. Furthermore, this duty to communicate material facts is an affirmative duty that "exists when a participant or beneficiary asks fiduciaries for information, and even when he or she does not." *Vallone v. CNA Fin. Corp.*, 375 F.3d 623, 640-41 (7th Cir. 2004) (citing *Anweiler v. Am. Elec. Power Serv. Corp.*, 3 F.3d 986, 991 (7th Cir. 1993)) (internal quotation marks omitted); *Bowerman*, 226 F.3d at 590. *See also Kenseth*, 610 F.3d at 466 ("Th[e] duty to inform is a constant thread in the relationship between beneficiary and trustee; it entails not only a negative duty not to misinform but also an affirmative duty to inform when the trustee knows that silence might be harmful."). Good faith is not a defense to an ERISA fiduciary's breach of the duty of loyalty. *Leigh*, 727 F.2d at 124.

In this case, Bruce Hartmann was, as previously discussed, a fiduciary of the Benefit Plan. He had an affirmative duty to inform Benefit Plan participants of the financial jeopardy of their medical coverage, including the payment of medical claims. However, Bruce Hartmann breached that duty when, from January 2006 through July 25, 2008, he was allowing new employees to enroll in the Benefit Plan while being aware that Mid-States was already approximately 18 months behind in paying the Benefit Plan's adjudicated medical claims. Secretary at ¶¶ 66-76. Neither Bruce Hartmann nor any other officer at Mid-States informed Mid-States employees about the significant number of unpaid medical claims. *Id.* at ¶ 68. Finally, it is clear that Bruce Hartmann's knowing failure to inform participants of the financial condition of the Benefit Plan caused harm to the Benefit Plan's participants, who during this same period incurred additional unpaid medical claims between November 1, 2006 and August 1, 2008. *Id.* at ¶ 72.

Thus, Bruce Hartmann misrepresented the financial condition of the Benefit Plan to participants and thereby breached his fiduciary duty in violation of ERISA § 404(a)(1)(A).

I.    **CONCLUSION**

For the foregoing reasons, the Secretary's motion for partial summary judgment is GRANTED on all four counts.


ENTER:


JAMES B. ZAGEL
U.S. District Judge


August 31, 2012